# In the United States Court of Federal Claims

BID PROTEST
No. 20-372C
Filed Under Seal: July 7, 2020
Reissued: August 17, 2020*

|  |  |  |
|---|---|---|
| GLOCOMS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Post-Award Bid Protest; Competition in Contracting Act ("CICA"); Judgment Upon the Administrative Record, RCFC 52.1; Injunctive Relief. |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |

*Sheridan L. England*, Counsel of Record, S.L. England, PLLC, Alexandria, VA, for plaintiff.

*Sosun Bae*, Trial Attorney, *Elizabeth M. Hosford*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

### I.   INTRODUCTION

Plaintiff, Glocoms, Inc. ("Glocoms"), brings this post-award bid protest matter challenging the United States Customs and Border Protection's ("CBP") decision to award a contract for monitor and caregiver services to Coastal Clinical & Management Services, Inc. ("Coastal"). The parties have filed cross-motions for judgment upon the administrative record,

---

* This Memorandum Opinion and Order was originally filed under seal on July 7, 2020 (ECF No. 24). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. The government filed a joint status report on behalf of the parties on August 7, 2020 (docket entry no. 26) in which it proposed certain redactions which the Court has adopted. And so, the Court is reissuing its Memorandum Opinion and Order, dated August 17, 2020, with the adopted redactions indicated by three consecutive asterisks within brackets ([***]).

pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Pl. Mot.; Pl. Mem.; Def. Mot.

For the reasons discussed below, the Court: (1) **DENIES** Glocoms' motion for judgment upon the administrative record; (2) **GRANTS** the government's cross-motion for judgment upon the administrative record; and (3) **DISMISSES** the complaint.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

This bid protest dispute involves a challenge to the CBP's evaluation process and award decision in connection with the award of a contract for monitor and caregiver services to Coastal (the "Caregiver Contract"). *See generally* Compl. Specifically, Glocoms raises three objections to the CBP's evaluation process and award decision, namely that: (1) the CBP violated the Competition in Contracting Act ("CICA"), and gave Coastal an unfair advantage, by allowing Coastal to adjust its quotation during the re-solicitation with the knowledge that its competitors had priced their original quotations higher than Coastal's original quotation of $2,578,532.80; (2) Glocoms was prejudiced by the CBP's failure to respond to its questions regarding wage and occupational codes during the re-solicitation; and (3) Coastal's adjusted quotation is technically unacceptable, because Coastal stated that it would [***]. Pl. Mem. at 12-16. And so, Glocoms requests that the Court set aside the CBP's award decision. *Id.* at 17.

### 1. The RFQ

As background, the CBP is a component of the United States Department of Homeland Security that is responsible for facilitating the flow of legal travel into the United States. AR Tab 7 at 68. The CBP's responsibilities include apprehending individuals who attempt to enter the United States illegally. *Id.*

On December 18, 2019, the CBP issued Request for Quotations No. 70B03C20Q00000043 (the "RFQ") seeking quotations to provide monitor and caregiver

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); Glocoms' motion for judgment upon the administrative record and memorandum in support thereof ("Pl. Mot."; "Pl. Mem."); and the government's cross-motion for judgment upon the administrative record ("Def. Mot."). Except where otherwise noted, all facts recited herein are undisputed.

services to detainees held at the Centralized Processing Center located in El Paso, Texas. *Id.*; AR Tab 7 at 27. The RFQ requires the awardee to provide 24/7 continuous service to foster the well-being of 800 detainees, including unaccompanied alien children and family units, using a team comprised of 14 staff members and one supervisor for each shift. *Id.* at 68-69; AR Tab 10 at 94.

In this regard, the RFQ provides that the offeror who submits the lowest-priced, technically-acceptable quotation would be awarded the Caregiver Contract. *Id.* at 28, 52*; see also* AR Tab 19 at 262. In addition, the RFQ contemplates a base period of performance of one year from the date of award, with four one-month option periods. AR Tab 7 at 70.

### 2. The Caregiver Contract Award

On January 29, 2020, the CBP awarded the Caregiver Contract to Coastal, the lowest-priced, technically-acceptable offeror. AR Tab 21 at 264-65. On the same date, Glocoms emailed the CBP's contracting officer seeking clarification as to whether Coastal's winning quotation encompassed all of the requirements contained within the RFQ, including option pricing. AR Tab 28 at 470. The contracting officer responded that Coastal's price reflected "the total for the base plus options (total) for full capacity." *Id.* at 471.

On January 30, 2020, Coastal notified the CBP that it had made a [***]. AR Tab 32 at 478. As a result of this [***], Coastal acknowledged that it could not perform the Caregiver Contract [***]. *Id.* And so, Coastal requested that the CBP terminate the Caregiver Contract for convenience. *Id.* at 479.

### 3. Glocoms' GAO Protest And The CBP's Corrective Action

On the same date that Coastal requested the termination of the Caregiver Contract, Glocoms filed a protest with the United States Government Accountability Office ("GAO") challenging the CBP's evaluation process and decision to award the Caregiver Contract to Coastal. AR Tab 28 at 417. On February 6, 2020, the GAO dismissed the protest as academic, based upon the CBP's representations that it would take corrective action by re-soliciting the RFQ. AR Tab 30 at 474; AR Tab 31 at 475.

Thereafter, the CBP re-solicited the RFQ on February 6, 2020. AR Tab 33 at 481-82. The re-solicited RFQ provides that the CBP would consider the following three evaluation factors in assessing the offerors' technical proposals:

1) The vendor shall explain how they will be adequately staffed (shift schedule) to provide 24/7 coverage and perform all other aspects of the Statement of Work;

2) The vendor shall have management staff capable of duties as defined in the Statement of Work; and

3) The vendor shall have understanding of CBP's Background Investigation (BI) requirement as defined in the Statement of Work and Security Clauses.

AR Tab 34 at 486.

The re-solicited RFQ also includes a wage determination from the United States Department of Labor that sets forth the mandatory wage and benefit determinations for the counties of El Paso and Hudspeth, Texas. AR Tab 45 at 796-807. This wage determination provides, in part, that the "contractor must provide employees with 1 hour of paid sick leave for every 30 hours they work up to 56 hours of paid sick leave each year." *Id.* at 802. The RFQ does not, however, contain specific Department of Labor occupational category codes for the caregiver services sought in the RFQ. *See* AR Tab 34 at 493 (stating that the contractor shall comply with FAR § 52.222-41, Service Contract Labor Standards, but showing that the CBP did not define the applicable occupational codes for the RFQ).

Six vendors submitted quotations in response to the re-solicited RFQ, including Glocoms and Coastal. AR Tab 36 at 559, AR Tab 39 at 634; AR Tab 42 at 722-731. On February 8, 2020, and February 15, 2020, Glocoms sent emails to the CBP's contracting officer to request a price breakdown and additional information related to the re-solicited RFQ's labor rates and the applicable Department of Labor occupational category code for the caregiver services sought in the RFQ. AR Tab 49 at 824, 826. It is undisputed that the CBP did not respond to either of Glocoms' emails. Pl. Mem. at 9; Def. Mot. at 4; Oral Arg. Tr. at 34:11-34:12.

Glocoms' and Coastal's technical proposals remained virtually identical to their original proposals during the re-solicitation. *Compare* AR Tab 11 at 101-23, *with* AR Tab 36 at 559-84, and AR Tab 13 at 135-78, *with* AR Tab 39 at 634-78. But, Coastal stated in its adjusted

4

quotation that it would use [***] to perform the Caregiver Contract, and that [***].  AR Tab 36 at 566.

Coastal also increased its proposed price from $2,578,532.80 to $3,684,611.72 in its adjusted quotation.  *Compare* AR Tab 19 at 261, *with* AR Tab 44 at 735.  By comparison, Glocoms decreased its proposed price in its adjusted quotation, making its quotation the third lowest-priced, technically-acceptable quotation.  *Id.*

After the bidding process closed, the CBP's contracting officer found that Coastal presented the lowest-priced, technically-acceptable quotation.  AR Tab 43 at 734.  And so, the CBP awarded the Caregiver Contract to Coastal on February 20, 2020.  AR Tab 45 at 737-38.

### 3. Glocoms' Second GAO Protest

On February 27, 2020, Glocoms filed a protest before the GAO challenging the CBP's evaluation process and award decision during the re-solicitation.  AR Tab 49 at 816.  The GAO dismissed this protest on March 25, 2020.  AR Tab 52 at 856-59.  Glocoms commenced this action shortly thereafter, on April 2, 2020.  *See generally* Compl.

### B. Procedural Background

On April 2, 2020, Glocoms filed the complaint in this bid protest matter.  *Id.*  On April 6, 2020, the Court entered a Protective Order.  *See* Protective Order, dated April 6, 2020.  On April 15, 2020, the government filed the administrative record.  *See generally* AR.  On May 1, 2020, Glocoms filed a motion for judgment upon the administrative record and a memorandum in support thereof.  *See generally* Pl. Mot.; Pl. Mem.

On May 19, 2020, the government filed a response and opposition to Glocoms' motion for judgment upon the administrative record and a cross-motion for judgment upon the administrative record.  *See generally* Def. Mot.  On May 29, 2020, Glocoms filed a reply in support of its motion for judgment upon the administrative record and a response and opposition to the government's cross-motion for judgment upon the administrative record.  *See generally* Pl. Resp.  On June 9, 2020, the government filed a reply in support of its cross-motion for judgment upon the administrative record.  *See generally* Def. Reply.  On June 30, 2020, the Court held an oral argument on the parties' cross-motions.  *See generally* Oral Arg. Tr.

The Court issued an oral opinion during the June 30, 2020, hearing. The Court issues this written opinion consistent with its prior oral ruling in this matter.

## III.   LEGAL STANDARDS

### A.   Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This Court reviews agency actions that are at issue in a bid protest matter under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the APA). Under this standard, an "'award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In this regard, the United States Court of Appeals for the Federal Circuit has explained that, "[w]hen a challenge is brought on the first ground, the test is 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.'" *Id.* (quoting *Impresa*, 238 F.3d at 1332-33). "'When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.'" *Id.* (quoting *Impresa*, 238 F.3d at 1333). In addition, when reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977). "The [C]ourt should not substitute its judgment for that of a procuring agency . . . ." *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis

or in violation of applicable procurement law." *Info. Tech. & Applics. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "'a reasonable basis for the agency's action, the [C]ourt should stay its hand even though it might, as an original proposition, have reached a different conclusion.'" *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). But, if "the agency 'entirely fail[s] to consider an important aspect of the problem, [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

### B. Judgment Upon The Administrative Record

Generally, RCFC 52.1 limits this Court's review of an agency's procurement decision to the administrative record. RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("'[T]he focal point for judicial review should be the administrative record already in existence.'") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). And so, unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC 52.1. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citation omitted).

### C. Injunctive Relief

Lastly, under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief . . . ." 28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has

succeeded upon the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *see also Centech Grp., Inc.*, 554 F.3d at 1037. In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive. If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others. If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for injunctive relief. *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd*., 357 F.3d 1319, 1324-1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate a likelihood of success upon the merits cannot prevail upon its motion for preliminary injunctive relief). This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)). But, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish an entitlement to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) (("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

### D.     The Competition In Contracting Act And FAR § 9.505(b)

The Competition in Contracting Act generally requires that procuring agencies engage in full and open competition. 41 U.S.C. § 3301(a). In this regard, this Court has recognized that a

"fundamental principle of government procurement is that [the agency must] treat all offerors equally and consistently apply the evaluation factors listed in the solicitation." *CliniComp Int'l, Inc. v. United States*, 117 Fed. Cl. 722, 741 (2014) (quoting *TLT Constr. Corp. v. United States*, 50 Fed. Cl. 212, 216 (2001)).

Section 9.505(b) of the Federal Acquisition Regulations ("FAR") provides that an unfair competitive advantage exists where a contractor competing for an award receives access to nonpublic information and the lack of equal access to that information prejudices the protestor. FAR § 9.505(b). The United States Court of Appeals for the Federal Circuit has held that a protestor must "establish not only some significant error in the procurement process, but also that there was a substantial chance it would have received the contract but for that error," to prove prejudice. *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1353 (Fed. Cir. 2005).

## IV. LEGAL ANALYSIS

The parties have filed cross-motions for judgement upon the administrative record on the issue of whether the CBP's evaluation process and award decision during the re-solicitation of the RFQ for the Caregiver Contract was reasonable and in accordance with the terms of the RFQ and applicable law. *See generally* Pl. Mem.; Def. Mot.

In its motion for judgment upon the administrative record, Glocoms raises three objections to the CBP's evaluation process and award decision, namely that: (1) the CBP violated CICA, and gave Coastal an unfair advantage, by allowing Coastal to adjust its quotation during the re-solicitation with the knowledge that its competitors had priced their original quotations higher than Coastal's original quotation of $2,578,532.80; (2) Glocoms was prejudiced by the CBP's failure to respond to its questions regarding wage and occupational codes during the re-solicitation; and (3) Coastal's adjusted quotation is technically unacceptable, because Coastal stated that it would [***]. Pl. Mem. at 12-16. And so, Glocoms requests that the Court set aside the CBP's award decision. *Id.* at 17.

The government counters that the CBP's evaluation and award decision were reasonable and consistent with the terms of the RFQ. Def. Mot. at 8-16. The government also argues that Glocoms has not shown that Coastal's adjusted quotation was technically unacceptable. *Id.* at

9

16-19.  And so, the government requests that the Court deny Glocoms' motion for judgment upon the administrative record and sustain the CBP's award decision.  *Id.* at 21.

For the reasons that follow, a careful review of the administrative record shows that the CBP's evaluation of adjusted quotations during the re-solicitation of the RFQ was reasonable and consistent with the terms of the RFQ.  In addition, Glocoms has not shown that it is entitled to the injunctive relief that it seeks in this case.  And so, the Court:  (1) **DENIES** Glocoms' motion for judgment upon the administrative record; (2) **GRANTS** the government's cross-motion for judgment upon the administrative record; and (3) **DISMISSES** the complaint.

> **A.    The CBP Did Not Violate CICA, FAR § 9.505
> Or Give Coastal An Unfair Competitive Advantage**

As an initial matter, Glocoms' claim that the CBP violated CICA, by giving Coastal an unfair competitive advantage during the re-solicitation of the RFQ, is not persuasive.  Pl. Mem. at 12-14.

Glocoms argues that the CBP violated CICA, because:  (1) the agency afforded Coastal two opportunities to bid on the RFQ and (2) the CBP allowed Coastal to submit an adjusted quotation with the knowledge that its competitors' proposed prices were not less than Coastal's original price proposal.  *Id.*; Oral Arg. Tr. at 7:7-7:12.  But, as the government explains in its cross-motion for judgment upon the administrative record, the CBP re-solicited the RFQ as part of its corrective action plan following a protest of the agency's initial award decision for the Caregiver Contract.  Def. Mot. at 8-9.  In doing so, the CBP could not have excluded Coastal— or any offeror—from the competition, because CICA requires that the government engage in "full and open competition."  *See* 41 U.S.C. § 3301(a).

The administrative record also shows that the CBP treated all of the vendors that submitted quotations during the re-solicitation equally, by allowing all offerors to submit quotations for the re-solicited RFQ and by affording all offerors that previously submitted quotations during the original solicitation—including Glocoms—the opportunity to adjust their quotations.  AR Tab 42 at 722-31.  Given this, Glocoms has not shown that the CBP violated CICA by allowing Coastal to compete during the re-solicitation of the RFQ.  41 U.S.C. § 3301(a).

Glocoms' claim that Coastal had an unfair competitive advantage over its competitors during the re-solicitation is also not persuasive. Glocoms argues that Coastal had an unfair competitive advantage, because Coastal knew that its competitors' proposed prices were higher than Coastal's original price quotation of $2,578,532.80. Pl. Mem. at 13; Oral Arg. Tr. at 17:24-18:13, 51:14-52:5. But, the administrative record shows that all offerors had information about Coastal's initial proposed price, because the CBP publicly disclosed Coastal's original proposed price when the agency initially awarded the Caregiver Contract to Coastal. *See* AR Tab 22 at 305. And so, Glocoms has not shown that Coastal had an unfair competitive advantage during the re-solicitation.

Glocoms' claim that the CBP violated FAR § 9.505(b) is also unpersuasive. Pl. Mem. at 13. Section 9.505(b) of the Federal Acquisition Regulations provides that an unfair competitive advantage exists where a contractor competing for an award receives access to non-public information and the lack of equal access to that information prejudices the protestor. FAR § 9.505(b). But, as discussed above, the administrative record in this case makes clear that Coastal did not have access to any non-public, proprietary information during the re-solicitation. Again, the record evidence makes clear that Coastal's original proposed price was known to all offerors during the re-solicitation. AR Tab 22 at 305. And so, Glocoms has also not shown that the CBP violated FAR § 9.505(b).

Because Glocoms has not shown that the CBP afforded Coastal an unfair competitive advantage—or that the agency violated CICA or FAR § 9.505(b)—during the re-solicitation of the RFQ, the Court must DENY Glocoms' claim.

### B.    Glocoms Was Not Prejudiced By The CBP's Failure To Respond To Its Questions During The Re-Solicitation

Glocoms' claim that it has been prejudiced by the CBP's failure to provide it with certain wage and occupational codes during the re-solicitation of the RFQ is also unsubstantiated.

Glocoms argues that it has been prejudiced, and subjected to unequal treatment, because the CBP did not answer certain questions submitted by Glocoms on February 8, 2020, and February 15, 2020, regarding wages and applicable occupational codes for the RFQ.[2] Pl. Mem.

---

[2] During oral argument, the government argued that, to the extent that Glocoms argues that it was prejudiced by the CBP's failure to respond to its questions, Glocoms has waived this claim pursuant to

11

at 13-14; Pl. Resp. at 7-9. While Glocoms correctly observes that the CBP did not respond to these questions, Glocoms fails to explain how it has been prejudiced by the agency's decision to leave its questions unanswered. *See* Pl. Mem. at 13-14 (showing that Glocoms fails to argue with any specificity how it was prejudiced by the CBP's decision not to answer its questions); Oral Arg. Tr. 19:7-20:19; *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353 (Fed. Cir. 2005); *see also Lyon Shipyard, Inc. v. United States*, 113 Fed. Cl. 347, 354 (2013) (holding that a protestor must show agency action in violation of a procurement regulation and significant prejudice as a result of such error).

In this regard, the administrative record makes clear that the CBP did not provide wage and occupational code information to any of the offerors during the re-solicitation. *See* AR Tab 45 at 744 (showing that the RFQ stated that the awardee shall comply with FAR § 52.222-41, Service Contract Labor Standards, but that the RFQ does not state specific wage and occupational code information). Glocoms also fails to identify any evidence in the administrative record that shows that the wage and occupational code information that it sought would have improved its chances of being awarded the Caregiver Contract. *See* Pl. Mem. at 13 (showing that Glocoms does not cite to any evidence to show that the information it sought regarding wages and occupational codes would have changed its offer or lowered its price). Because Glocoms has not shown that it has been prejudiced by the CBP's decision not to respond to its inquiries, the Court also DENIES this claim.

### C. Glocoms Has Not Shown That Coastal's Adjusted Quotation Was Not Technically Acceptable

Glocoms' final objection—that Coastal's adjusted quotation was technically unacceptable because Coastal states in the quotation that it may [***]—is equally unavailing.

Glocoms argues that Coastal's quotation is not technically acceptable, because the [***] would violate the Service Contract Act and Executive Order 13706. Pl. Mem. at 14-16; Pl. Resp. at 10-12. But, even if true, the Court agrees with the government that such compliance issues are

---

the Federal Circuit's holding in *Blue & Gold* because Glocoms did not object to the agency's inaction prior to the deadline for submitting proposals. Oral Arg. Tr. 35:12-36:25; *see also Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007). The Court does not find waiver appropriate here and resolves this case on the merits.

matters of contract administration that fall beyond the Court's bid protest jurisdiction. Def. Mot. at 18; 41 U.S.C. §§ 7101-7109 (providing that matters of contract administration—including matters of contract performance—fall beyond the Court's bid protest jurisdiction); *see also Continental Serv. Grp., Inc. v. United States*, 722 Fed. App'x 986, 992 (Fed. Cir. 2018).

The government also correctly observes in its cross-motion for judgment upon the administrative record that compliance with the Service Contract Act and Executive Order 13706 are not technical evaluation factors under the terms of the RFQ. Def. Mot. at 17.[3] Because Glocoms neither shows that the Court may consider its claim regarding Coastal's compliance with the Service Contract Act or Executive Order 13706, nor that such compliance is a technical requirement under the RFQ, the Court must DENY this claim.

### D.     The Court Denies Glocoms' Motion For Injunctive Relief

As a final matter, Glocoms is not entitled to the injunctive relief that it seeks in this case. Glocoms requests that the Court set aside the CBP's decision to award the Caregiver Contract to Coastal. Pl. Mem. at 16. But, it is well-established that a plaintiff that has not succeeded upon the merits of its claims cannot prevail upon a request for injunctive relief. *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005). In this case, Glocoms has not prevailed upon the merits of any of its claims challenging the CBP's evaluation process and award decision. And so, the Court must also DENY Glocoms' request for injunctive relief.

### V.     CONCLUSION

In sum, a careful review of the administrative record in this matter shows that the CBP's evaluation process and award decision during the re-solicitation of the RFQ was reasonable and consistent with the RFQ. Glocoms also has not shown that Coastal's adjusted quotation was technically unacceptable under the terms of the RFQ.

And so, for the foregoing reasons, the Court:

---

[3] During oral argument, Glocoms argued that Coastal's adjusted quotation was not technically acceptable, because the quotation violated the requirement in the RFQ that vendors explain how they will be adequately staffed to provide 24/7 coverage and to perform all other aspects of the Statement of Work. Oral Arg. Tr. at 24:18-25:17; *see also* AR Tab 34 at 486. But, the Court does not read this technical evaluation factor, or the Statement of Work, to encompass compliance with the Service Contract Act or Executive Order 13706. AR Tab 34 at 486, 527-32.

1. **DENIES** Glocoms' motion for judgment upon the administrative record;

2. **GRANTS** the government's cross-motion for judgment upon the administrative record; and

3. **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on April 6, 2020. This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication. The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **August 7, 2020**.

    **IT IS SO ORDERED.**

                                          s/ Lydia Kay Griggsby
                                          LYDIA KAY GRIGGSBY
                                          Judge